[S. F. No. 1218.   Department Two.—May 4, 1900.]

FIDELITY AND CASUALTY COMPANY, Plaintiff in Interpleader, v. MARY R. K. THOMPSON et al., Defendants.   J. K. BOOTHE, Appellant, v. S. M. CHAPMAN et al., Respondents.

ASSIGNMENT OF INSURANCE POLICY—WANT OF CONSIDERATION—FRAUD UPON CREDITORS OF ASSIGNOR.—Where an insurance policy payable to the surviving wife of the insured was assigned by her after the death of the insured, without consideration moving to her, to an aunt who was a creditor of the insured, with intent to hinder, delay, and defraud the judgment creditors of the assignor, such creditors are entitled to the payment of their claims out of the proceeds of the policy as against the assignee.

ID.—INTENT TO DEFRAUD CREDITORS—SUPPORT OF FINDING—APPEAL.— Evidence tending to show that the wife, who was the payee of the policy, was insolvent, and had declared a homestead upon her real property, and had assigned the insurance policy without legal consideration, so as to place all of her property beyond the reach of her existing creditors, sufficiently supports a finding of intent to defraud her creditors by such assignment, for the purposes of review upon appeal, where all reasonable implications derivable from the evidence must be considered as established facts.

ID.—ASSIGNEE WITHOUT CONSIDERATION NOT PROTECTED—IGNORANCE OF FRAUDULENT INTENT.—An assignee who paid no consideration for the policy is not protected against the creditors of the assignor, however ignorant of the fraudulent intent of the assignor.

ID.—GUARANTY BY WIDOW OF INSOLVENT HUSBAND'S NOTE—CONSIDERATION—PROMISE TO HUSBAND—MORAL OBLIGATION INSUFFICIENT.— Where the widow, without consideration other than a supposed moral obligation, and a promise made to the husband to pay his debt without legal obligation to do so, made a guaranty to pay her husband's note to the assignee of the policy, such guaranty was a mere legal gratuity, which could not be supported by a mere moral obligation, and could not constitute a legal consideration to support the assignment of the policy.

ID.—TRANSFER OF NOTE IN TRUST.—The transfer of the note of the husband by the assignee of the policy to the assignor thereof in trust for collection, by the assignor, who was executrix of the will of her insolvent husband, and to pay the sums collected according to a declaration of trust made by the assignor, cannot constitute a consideration for a personal guaranty of the note by the assignor of the policy, nor for the assignment of the policy.

ID.—ASSIGNMENT OF POLICY AS MEANS OF PAYMENT ON NOTE—DEPARTURE FROM TRUST.—The assignment of the policy, if made for the purpose of enabling the assignee to receive the proceeds of the policy as a means of payment of the husband's note transferred in trust to the assignor of the policy for collection, would contemplate a departure from the trust, and a violation of its provisions, for which the transfer of the note could not be the consideration.

APPEAL from a judgment of the Superior Court of Napa County and from an order denying a new trial. E. D. Ham, Judge.

The facts are stated in the opinion.

William H. Chapman, and P. F. Benson, for Appellant.

T. B. Hutchinson, and John T. York, for Respondents.

BRITT, C.—The plaintiff, an insurance corporation, instituted this action to compel the defendants to interplead concerning their respective claims to the money due on a policy of insurance issued by plaintiff on the life of one James M. Thompson, which policy was by its terms payable to the defendant Mary R. K. Thompson, surviving wife of the insured. Said James M. Thompson died November 1, 1892. The fund

in dispute, four thousand dollars in amount, was paid into court
to abide the result of the action, and the plaintiff, by consent
of the other parties, was dismissed from the case; Mrs. Thomp-
son disclaimed any interest in the fund; the defendant Miss
J. K. Boothe claims the whole sum in virtue of an assignment
of the policy and the demand for the money due thereon to her
executed by Mrs. Thompson after the death of said insured; the
defendants Chapman, Preece, Derby, and the Bank of Napa,
who hold judgments against Mrs. Thompson, resist the claims
of Miss Boothe and aver that such assignment was in fraud of
their rights as creditors of the assignor; they pray that the
fund be adjudged subject to the lien of certain executions they
have caused to be levied upon the same as a credit of Mrs.
Thompson in the hands of the plaintiff. The debts on which
said judgments are founded existed at the time of said assign-
ment, but the judgments were recovered subsequently. The
court below found as facts, among other things, that the assign-
ment was made by Mrs. Thompson with intent to hinder, delay,
and defraud her creditors, and that Miss Boothe paid no con-
sideration therefor; and rendered judgment that the money in
dispute be applied, so far as necessary, to satisfy the judgments
aforesaid against Mrs. Thompson. Miss Boothe has appealed.

The main effort of appellant is to show that the findings just
mentioned were not justified by the evidence. On appeal we
must, of course, consider as facts established such reasonable
inferences derivable from the evidence as tend to uphold the
findings, for it was the province of the trial judge to draw the
deductions expressed in the findings, and it is to be assumed
that his understanding of the effect of the evidence was correct.
Thus viewing the evidence, it was unquestionably sufficient to
sustain the finding of fraudulent intent in the mind of Mrs.
Thompson at the time of the assignment; it tended to show
that she was then insolvent, and had reason to be aware of the
fact; that about the same time she took steps to place certain
real property beyond the reach of creditors by declaring a
homestead thereon; and the complex arrangement she made
with Miss Boothe, without legal consideration, as will pres-
ently appear, when considered in connection with the other
facts mentioned, was itself of a character to induce strong sus-

picion of fraud. (See *Emmons v. Barton,* 109 Cal. 662, 671; *Judson v. Lyford,* 84 Cal. 505; *Swartz v. Hazlett,* 8 Cal. 118; *Woolridge v. Boardman,* 115 Cal. 74.)

The only question of any moment in the case is whether the evidence sustains the finding that Miss Boothe rendered no consideration for the assignment of the policy. If she did not, then she cannot hold the assigned property as against the creditors of the assignor, however ignorant she may have been of the latter's fraudulent intent. (*Lee v. Figg,* 37 Cal. 328; 99 Am. Dec. 271.) When James M. Thompson died, November 1, 1892, he was indebted to Miss Boothe on a promissory note, then long past due, in the sum of four thousand two hundred dollars, besides interest; on July 23, 1893, the widow, said Mary K. Thompson, wrote a guaranty of payment with her signature thereto on the back of said note, and Miss Boothe then indorsed and delivered the note to Mrs. Thompson. The latter next executed a written declaration of trust, dated July 26, 1893, reciting the transfer of the note to her by Miss Boothe, and stating that she held the same in trust for collection, and to pay the sums collected thereon as follows: To Miss Boothe during her life the interest to be received; and upon her death to pay certain sums to certain third persons mentioned; then to pay the expenses of Miss Boothe's last illness and of her funeral; and to retain any balance for herself. The last provision was afterward changed by the parties to the trust so that the balance was to be retained for the use of two named children of Mrs. Thompson. On August 15, 1893, Mrs. Thompson made to Miss Boothe the assignment of which the respondents complain. At the time of these transactions Mrs. Thompson was executrix of the will of her deceased husband; his estate, the evidence tended to show, was insolvent, but it is not shown that Miss Boothe had knowledge of that fact or of the insolvency of Mrs. Thompson herself.

There is no evidence that Mrs. Thompson was under legal obligation to pay the note of her husband to Miss Boothe; she testified that she had been benefited by the consideration for the same and was morally obliged to pay it; how she was benefited is wholly unexplained, and her moral obligation to pay seems to rest on the circumstance testified by her that she had

promised her husband before his death that she would pay it, and the further facts that Miss Boothe is her aunt and is in feeble health. Hence the guaranty of payment of the note by Mrs. Thompson was a gratuity to which Miss Boothe had no legal right and for which she parted with no value. The merely moral obligation which Mrs. Thompson conceived herself to owe was not a sufficient consideration to support the guaranty. (*Peek v. Peek,* 77 Cal. 106; 11 Am. St. Rep. 244.)

The evidence tended to show that the obligation created by this guaranty was the consideration for the assignment of the insurance policy. Mrs. Thompson testified: "The only consideration for the assignment of this policy to Miss Boothe was the fact that my husband was owing her upon this note, and I had signed [guaranteed] the note." Miss Boothe testified: "The consideration for making that indorsement of the note and the assignment and the declaration of trust, was her honest heart. She [Mrs. Thompson] desired to secure me." As Miss Boothe gave nothing for the guaranty, it is clear that what she received in performance of it cost her nothing.

An attempt is made to show that the transfer of the note by Miss Boothe to Mrs. Thompson in trust was a legal consideration moving to the latter for her guaranty of payment of the note and also the assignment of the policy. The testimony we have quoted was to the effect, however, that the consideration was the supposed moral obligation of Mrs. Thompson to pay her husband's debt. Moreover, by the transfer of the note and by the terms of the trust Miss Boothe parted with the right to collect the note, and Mrs. Thompson became the person entitled to receive and hold the amount due thereon; it is, therefore, evident that the assignment of the policy by Mrs. Thompson to Miss Boothe as a means of enabling the latter to receive the proceeds as payment of that amount on the note was to that extent a departure from the trust and a violation of its provisions; and we are quite unable to perceive how the transfer of the note in trust could be the consideration for another transaction violative of the provisions of the trust. There is an irreconcilable conflict of ideas in such a conception. In any aspect of the evidence we conclude that Miss Boothe gave nothing of value for the assignment, and cannot withhold the proceeds thereof from the creditors of the assignor.

Some other findings are assailed for alleged want of evidence to sustain them; we have attentively read the evidence brought up and think it quite sufficient to uphold all the findings which in their turn are necessary to support the judgment. There is no material error in the record, and the judgment and order denying a new trial should be affirmed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are affirmed.

                                    McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.