FIRST NAT. BANK OF FAIRBANKS v. TIMMINS et al.

(Fourth Division.   Fairbanks.   October 17, 1910.)

No. 1370.

1. DEEDS (§§ 22, 25*)—VENDOR AND PURCHASER (§ 224*)—QUIT-
     CLAIM—BARGAIN AND SALE—RIGHTS OF PURCHASER.
       A quitclaim deed purports to pass only the interest of the vendor in and to his property, while a bargain and sale deed admittedly passes the property itself.   Thus it is universally held that a vendee taking a quitclaim deed to real estate receives such property with constructive notice of prior outstanding equities.

       [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 40–42, 49; Dec. Dig. §§ 22, 25;* Vendor and Purchaser, Cent. Dig. §§ 469–473; Dec. Dig. § 224.*]

2. MORTGAGES (§ 32*)—DEED TO SECURE DEBT.
       A deed given to one to whom the maker is indebted to secure the debt is in law a mortgage.   Where the debt is not paid,

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

and other parties claim the property by a subsequent deed from the original debtor, he takes subject to the first deed.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 60–66, 84–94; Dec. Dig. § 32.*]

This is an action to foreclose a mortgage, alleged to have been given in the form of a deed absolute by the defendants, Timmins and Roden, to one Bonnifield, and subsequently transferred to the plaintiff herein.

Chas. E. Jones on September 3, 1907, optioned to John L. Timmins and Henry Roden, for the sum of $4,500, $2,000 cash, and $2,500 on or before March 3, 1908, a certain lot in the town of Fairbanks, Alaska, Fourth judicial division. Under the terms of the option, $2,000 in cash was paid, a deed was executed by Jones to Timmins and Roden, and placed in escrow with the First National Bank, in Fairbanks, Alaska, to be delivered to them upon receipt of the deferred payment, in the sum of $2,500.

To make the first payment of $2,000, Timmins and Roden borrowed $1,000 from one Samuel A. Bonnifield, then the president of the First National Bank, plaintiff herein. When the deferred payment became due, on March 3, 1908, Timmins and Roden again called on Bonnifield for the sum of $2,500 to meet the payment under the option to Jones, which he advanced for them, but upon the express understanding that the lot would be deeded to him, in consideration, not only of the advance of the $2,500, but also for the $1,000 previously advanced. Timmins and Roden executed the deed to Bonnifield on March 11, 1908, at which time they agreed and understood that the said deed should constitute a mortgage on the lot, to secure Bonnifield in the sum of $3,500, and that interest should be paid at the rate of 12 per cent. per annum, and a reasonable sum allowed as attorney fees in collecting the said indebtedness.

On June 22, 1909, Bonnifield, by his attorney in fact, conveyed all his right, title, and interest in and to the lot, and assigned the debt, as well as his interest and attorney fees, to the First National Bank, plaintiff herein.

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

This action is brought by the First National Bank, asking the court to construe the deed from Timmins and Roden to Bonnifield to be a mortgage on the lot in question, and to foreclose the debt secured by the mortgage, in the sum of $3,485, with interest at 12 per cent. per annum from October 4, 1909, to quiet the plaintiff's claim to the lot by removing a cloud upon its title by reason of some claim to said lot by one Cascaden, through title from Timmins and Roden.

Defendant Cascaden, by his amended answer, alleges, and by his evidence claims, that in November, 1908, Roden sold and conveyed by deed his interest in and to said lot in question, for a valuable consideration, to Timmins. This deed of conveyance, alleged to have been executed on or about June 1, 1909, was lost and was never recorded; that on July 1, 1909, while in the actual possession of the lot, Timmins sold the same, for a valuable consideration, contemporaneously paid to the defendant. The deed of conveyance was recorded in the office of the Fairbanks recording precinct on July 3, 1909. The defendant Cascaden also alleges: First, that the conveyance from Bonnifield to the plaintiff herein is void; second, that the deed or mortgage from Timmins and Roden to Bonnifield was recorded prior to July 1, 1909, and that defendant has neither constructive nor actual notice of Bonnifield's or plaintiff's title or claim to said lot. The reply puts in issue these allegations.

John L. McGinn, of Fairbanks, for plaintiff.
Roy V. Nye, of Ketchikan, for defendants.

OVERFIELD, District Judge. The pleadings and facts raise two questions, the rulings on which will control the decree and judgment in this action.

The first contention, and one specially presented to the court by the briefs of counsel, is whether the title to the lot in question passed to the plaintiff under and by virtue of a deed dated June 27, 1909, from one Samuel A. Bonnifield, executed by his attorney in fact, D. J. Hurley. There is no question either as to the form of the deed of conveyance or the power of attorney; the contention being that, at the time

of the transfer by Hurley to the plaintiff, the grantor, Bonnifield, was non compos mentis, and by virtue of which mental condition the deed of conveyance was void.

The court is of opinion that, to sustain the position taken by the attorney for defendant in this matter and in this kind of an action, he must produce clear and convincing proof. The only evidence before the court to substantiate this point is that of the attorney for defendant, who took the stand during the hearing of the action, and testified that he knew Bonnifield and had an acquaintance of several years' standing, and that during the spring, some two months prior to the deed of conveyance, in 1908, he had occasion to and did call upon Bonnifield, in Seattle, where he had an opportunity to observe his physical and mental condition, which he described in more or less detail.

The attorney for defendant does not attempt to qualify as an expert on the subject of insanity, nor is there any evidence of the mental condition of Bonnifield at the time of the execution of the deed in question. In fact, the evidence given by the attorney above mentioned is the only evidence before the court with respect to the mental condition of Bonnifield, either before, at the time, or subsequent to the date of the execution of the deed by Hurley to the plaintiff, except an admission by the attorney for defendant during the hearing that said Bonnifield is now within the Fourth judicial division, Alaska, and has never been legally adjudged insane by a competent tribunal.

No decision has been brought to the attention of this court that would warrant the finding, under such testimony and presumption, that the deed executed by power of attorney is void. In this action the court is of opinion that only on strong, clear, and convincing evidence would the court be justified in finding the deed even voidable. That such evidence is wanting need not be further discussed. It may be noted that the presence of Bonnifield at this time, within the district and jurisdiction of this court, may very properly raise the presumption that he has ratified his attorney's act, if there could have been any question about its validity.

The second contention on the part of the defendant Cascaden is that the failure on the part of the plaintiff and its predecessor in interest to record the deed of conveyance, from defendants Timmins and Roden to Samuel A. Bonnifield, dated March 11, 1908, and the further fact that defendant herein did not have actual notice of the existence of the prior deed of conveyance, herein claimed as a mortgage, he became a bona fide purchaser for value, under a deed of . bargain and sale from Timmins, on July 1, 1909.

The allegation of the complaint that the deed of March 11, 1908, from Timmins and Roden to Bonnifield, though absolute on its face, was in fact a mortgage, and given to secure the advance made by plaintiff and Bonnifield, in the sum of $3,500, is sustained by a fair preponderance of the evidence; in fact it is practically conceded by the testimony of defendant Timmins.

The contention that defendant Cascaden is a bona fide purchaser without notice is denied by the plaintiff: First, because Cascaden's conveyance from Timmins is a quitclaim deed; and, second, because Cascaden had actual notice of the lien of the plaintiff, and failed to inform himself of the true state of affairs with reference to the title of Timmins to the lot in question.

It first becomes necessary to pass upon the character and the effect of the instrument passed between Timmins and Cascaden. A quitclaim deed is designated, not alone by its terms, but also from the adequacy of the consideration, and other circumstances showing the intention of the parties. The deed from Timmins to Cascaden contains the following words:

"Granted, bargained, sold, remised, released and forever quitclaim unto the said party of the first part, lot No. 1," etc.

It is held that the following granting words constitute quitclaim deed:

"Quitclaim, bargain and sell all right, title and interest, claim and demand of the grantor." "That the grantors grant, bargain and sell unto grantee all right, title and interest in and to the following described land, to warrant and defend the same under the grantee." Reynolds v. Shaver, 59 Ark. 299, 27 S. W. 78, 43 Am. St. Rep. 36; Wightman v. Spofford, 56 Iowa, 145, 8 N. W. 680.

It is likewise held that the following granting words indicate a bargain and sale deed:

"To alien, release, grant, bargain, sell and convey the undivided one-half of certain described lands." "To sell, alienate, convey and quitclaim the following tract of land." U. S. v. California Land Co., 148 U. S. 31, 13 Sup. Ct. 458, 37 L. Ed. 354; U. S. v. Dalles Military Road Co., 148 U. S. 49, 13 Sup. Ct. 465, 37 L. Ed. 362; Abernathy v. Stone, 81 Tex. 430, 16 S. W. 1102; Wilson v. Irish, 62 Iowa, 260. 17 N. W. 511.

A quitclaim deed purports to pass only, the interest of the vendor in and to his property, while a bargain and sale deed admittedly passes the property itself. Thus it is universally held that a vendee taking a quitclaim deed to real estate receives such property with constructive notice of prior outstanding equities. How far and to what extent this implied notice will extend gives rise to, conflicting decisions, but it may be stated to be the law, under universal authority and decision, that a quitclaim deed will pass the interest in the property of the vendor, subject to any and all defects in his title thereto, which are discoverable by the exercise of reasonable diligence in making proper examinations and inquiries. Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618; McDonald v. Belding, 145 U. S. 492, 12 Sup. Ct. 892, 36 L. Ed. 788; Johnson v. Williams, 37 Kan. 179, 14 Pac. 537, 1 Am. St. Rep. 243; Ferguson v. Tarbox, 3 Kan. App. 656, 44 Pac. 905; Pleasants v. Blodgett, 39 Neb. 741, 58 N. W. 423, 42 Am. St. Rep. 624.

While the intent of the parties should prevail in deciding whether, under all the surrounding circumstances, a deed is one of bargain and sale, or a quitclaim, the courts seem to scrutinize carefully, not only the granting words employed, but also the consideration passing at the time of the execution of the instrument. Practically the same combination of words used in the deed here under consideration, with a mere nominal consideration, will be found under many authorities and decisions to constitute quitclaim deed. While the same words, together with valuable and adequate consideration, will find authority and abundance of decisions holding such a conveyance one of bargain and sale, under the same surrounding circumstances. So far as the face of the instrument discloses,

the intention of the parties to this deed might well be construed to be one of bargain and sale; but the evidence discloses surrounding circumstances which would make such a finding in this action inequitable.

The consideration mentioned in the deed, in the sum of $5,000, the evidence shows was not a present one. Both Timmins and Cascaden testified that a year previously Cascaden had signed as surety a promissory note with Timmins, payable to one McCarthy, and that $10,000 was still due and payable on July 1, 1909, on which date the conveyance shows Cascaden passed by check this amount to McCarthy. They both admit that the consideration for the transfer of this lot, if any, passed in April, 1908, when Cascaden signed the note as surety. But they contend that, at that time, Timmins said he would make good any amount of the $15,000 Cascaden might find himself obliged to pay. Timmins admits he paid $5,000 on the notes and had conveyed his mining property to Cascaden in repayment of the $10,000, which Cascaden was obliged to pay. Timmins admits that the deed of conveyance of his mining property to Cascaden was in payment of this obligation, but with the distinct understanding that if the mining property, which is of uncertain value and undeveloped, did not prove of the value of $10,000, he would make up any deficiency, provided he was able to do so.

There is no doubt a moral obligation rested upon Timmins, under such an agreement, to make good the deficiency to Cascaden, if any should be found to exist. Such moral obligation is not a sufficient consideration in a deed of conveyance (Fidelity Co. v. Thompson, 128 Cal. 506, 61 Pac. 94), and there might well be a legal obligation, as between Timmins and Cascaden, to make up such a deficiency and support the deed of conveyance for such deficiency, within a reasonable time. Such a consideration would not be held sufficient, where the interests of third parties are concerned.

There are other surrounding circumstances, however, that must be considered before finally passing on the deed in question. While at the hearing it was admitted by both the evidence of Timmins and Cascaden that the deed had been given

by Timmins and Roden to Bonnifield March 11, 1908, yet they both deny knowledge of that fact on July 1, 1909, at the time Timmins conveyed the deed to Cascaden herein. Timmins testifies that he had forgotten the deed, forgotten in fact that he had ever signed such an instrument, and intimates that it never was signed, except as a matter of form to assist in swelling the assets of the plaintiff bank. The circumstance, however, remains undisputed that Timmins had informed Cascaden on July 1, 1909, previous to the execution of the conveyance to Cascaden, that the title to the lot from Jones had never come into his actual possession, and he frankly stated that the plaintiff bank had paid the sum of $3,500 on the purchase price, and that the evidence on that indebtedness was still held by the bank.

Cascaden does not deny any of these facts, though to a direct question he does say that he asked if there was any mortgage or lien; that defendant Timmins answered that there were none. He might well have evaded this question on the ground that he did not consider the deed from Timmins, from himself and Roden to Bonnifield, given as security, a mortgage for the sum of $3,500 advanced on the purchase price. There can be no doubt but that Cascaden, who was accompanied by his attorney on this occasion, had sufficient notice which to any reasonable man of ordinary business ability would put him on inquiry as to the title to this lot, and it is patent that even a casual inquiry, at the plaintiff bank, in the ordinary course of affairs, would have disclosed the true state of Timmins' title in and to the lot.

While the record would have shown the title still in Jones, as alleged, while Timmins was in the actual possession of the lot and had been for some time, yet it is conceded that Cascaden knew that Timmins recognized the debt due the bank as a lien on this particular lot, and was at that time depositing rent therefrom with the plaintiff, in payment of the interest and principal, on this obligation.

Under such circumstances, I do not deem it necessary to cite further authorities to show that the conveyance from Timmins to Cascaden is not and was not considered other

than a quitclaim deed, when it was executed, and the defendant Cascaden is entitled only to the interest of Timmins, subject to the equities of this plaintiff.

Let findings of fact and conclusions of law be prepared.